**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| ABDULKADIR SHARIF ALI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  1:22CV159 |
| | ) |
| EDDIE M. BUFFALOE, JR., | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 1.) Respondent has moved to dismiss the Petition under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry 8 (the "Motion"); see also Docket Entry 9 (Supporting Brief).) For the reasons that follow, the Court should deny the Motion to the extent it relies on the defense of non-exhaustion, convert the Motion to a motion for summary judgment as it relates to an adjudication of the merits of Petitioner's claims, grant summary judgment for Respondent on Petitioner's bribery subclaim, and deny summary judgment on all of Petitioner's remaining subclaims.

## I.  Background

On August 8, 2014, a jury in the Superior Court of Guilford County found Petitioner (and his co-defendant) guilty of attempted robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, assault with a deadly weapon inflicting serious injury, and first degree burglary in cases 13 CRS 100094, 100098,

10099, and 14 CRS 24118.  See State v. Sheikh, No. COA-15-688, 786 S.E.2d 433 (table), 2016 WL 1744651, at *1 (N.C. Ct. App. May 3, 2016) (unpublished).  The trial court sentenced Petitioner to three consecutive prison terms of 59 to 83 months, 59 to 83 months, and 23 to 40 months.  See id. at *2.[1]

On February 23, 2021, a Disciplinary Hearing Officer ("DHO") at the Caledonia Correctional Institution (where Petitioner was serving his sentences for the underlying convictions described above) convicted Petitioner after a hearing of disciplinary offenses "A-99" in reference to "A-03" for attempted assault on prison staff, "B-03" for tampering with a locking device, and "B-25" for disobeying a direct order.  (See Docket Entry 1, ¶¶ 1-7.)  As a result of those convictions, the DHO sentenced Petitioner to, inter alia, 30 days in restrictive housing for disciplinary purposes ("RHDP") (see id., ¶ 3), and loss of 120 days of sentence reduction credits (see id. at 15).[2]  Thereafter, prison officials denied Petitioner's appeal and upheld his disciplinary convictions and sentences.  (See id., ¶ 9.)

---

[1] The North Carolina Court of Appeals found no error in Petitioner's convictions and sentences, Sheikh, 2016 WL 1744651, at *2, the North Carolina Supreme Court denied Petitioner's petition for discretionary review ("PDR"), State v. Sheikh, 369 N.C. 39 (2016), and the United States Supreme Court denied Petitioner's petition for a writ of certiorari, Ali v. North Carolina, ___ U.S. ___, 137 S. Ct. 1218 (2017).  After the trial court denied Petitioner's Motion for Appropriate Relief ("MAR") collaterally challenging his convictions and sentences, this Court dismissed with prejudice Petitioner's action under 28 U.S.C. § 2254 attacking his underlying convictions and sentences without issuance of a certificate of appealability.  See Ali v. Hooks, No. 17CV1034, 2018 WL 3421338, at *1 (M.D.N.C. July 13, 2018) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 4, 2018) (Biggs, J.).

[2] Throughout this Recommendation, pin citations refer to the page numbers in the footer appended to those materials at the time of their docketing in the CM/ECF system.

Petitioner subsequently submitted his instant Petition seeking restoration of the 120 days of sentence reduction credits to the United States District Court for the Western District of North Carolina (see id. at 1, 15), along with a motion for appointment of counsel (Docket Entry 2). That court transferred the case to this Court (see Docket Entries 3, 4), which denied the motion for appointment of counsel and ordered Respondent to answer the Petition (Docket Entry 5). Respondent thereafter moved to dismiss the Petition for failure to state a claim for which relief can be granted, both on the substance of the Petition's averments and on grounds of non-exhaustion (Docket Entries 8, 9), and Petitioner responded in opposition (Docket Entry 12). Respondent did not submit a reply. (See Docket Entries dated July 27, 2022, to present.)

## II. Ground for Relief

The Petition alleges "Due Process violations secured by The 14th Amendment to The U.S. Constitution" (Docket Entry 1, ¶ 12 (Ground One) (stray parenthesis omitted)), in that "staff at the prison obstructed [his] defense by tampering/destroying witness statements," "Sergeant Riddick bribed the two offenders with cake," the DHO "denied [the two offenders] as witnesses without stating a reason as to why," Petitioner "was not allowed to refute any 'evidence,' or shown any evidence that was used against [him]," he "was denied camera footage that had exculpatory value," and he "was not allowed to speak by [DHO] who failed to be fair and impartial" (id., ¶ 12 (Ground One)(a)).

## III. Discussion

### A. Exhaustion

Petitioner admitted in the Petition that he did not challenge his prison disciplinary convictions and sentences in the state courts (see id., ¶¶ 9, 10) and, in response to the Petition's request that he "explain why" he "did not exhaust [his] state remedies," he stated as follows:

> The State of North Carolina has taken the position that they do not provide [j]udicial review and or oversight of [p]rison disciplinary proceedings. The North Carolina [s]tate courts[] state that they are a matter of internal administrative overview.

(Id., ¶ 12(Ground One)(b); see also id., ¶ 12(Ground One)(e) ("The only remedy was the administrative appeals process . . . . There are no state court remedies/procedures concerning these types of matters." (emphasis omitted)).)

In turn, Respondent asserts that, "[b]efore seeking federal habeas review, petitioners must first exhaust their state remedies." (Docket Entry 9 at 11 (citing 28 U.S.C. § 2254, and Todd v. Baskerville, 712 F.2d 70, 73 (4th Cir. 1983)).) More specifically, Respondent contends that "[t]he exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition" (id. (citing Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998))), and "he ha[d] the right under the law of the [s]tate to raise, by any available procedure, the question presented" (id. (citing 28 U.S.C. § 2254(c))). Respondent further maintains that "[t]he North Carolina Supreme Court [] has explained that prisoners

-4-

raising constitutional challenges to the denial of good-time, gain-time credits, may raise these claims in state court." (Id. (citing Jones v. Keller, 364 N.C. 249, 253-54 (2010)).) According to Respondent, "[a] petitioner can exhaust his state remedies . . . [by] fil[ing] a civil action" or "a state habeas corpus petition in the superior court," and "then appeal any adverse ruling to the North Carolina Court of Appeals, and then seek discretionary review in the [North Carolina Supreme Court]." (Id. at 12 (citing N.C. R. Civ. P. 3, Tyler v. Hooks, 945 F.3d 159, 164 (4th Cir. 2019), and Jones, 364 N.C. at 253-54).) Respondent thus argues that, because "[i]t is undisputed that Petitioner has not sought any review [of his February 2021 disciplinary convictions and sentences] in the state courts[,] . . . [t]his [C]ourt should therefore dismiss the [P]etition without prejudice to permit Petitioner to exhaust his claims." (Id.)

In response, Petitioner counters that, in a case before other judges of this Court, a prisoner "filed a [f]ederal [h]abeas corpus [petition under Section 2254] challenging prison disciplinary convictions resulting in the loss of sentence reduction credits," whereupon the state "argued that [the prisoner] should first exhaust his state court remedies in the North Carolina courts," and the Court "dismissed without prejudice [the prisoner's] petition to allow him to present his challenge in [the] state courts." (Docket Entry 12 at 8 (referencing Clark v. Perry, No. 1:15CV388, Docket Entry 18 (M.D.N.C. Feb. 1, 2016) (Eagles, J.)).) Petitioner points out that, "[w]hen [the prisoner] presented his challenge to prison

-5-

disciplinary convictions resulting in the loss of sentence reduction credits" to the state trial court, "the state argued that state courts in North Carolina do not provide judicial review over prison disciplinary proceedings and the state [trial] court[] dismissed [the prisoner]'s action." (Id. (capitalization omitted).) Petitioner further notes that, after the prisoner "returned to [this C]ourt," "obtained a new prison disciplinary hearing," and "filed a [new h]abeas [c]orpus [petition under Section 2254] on issues resulting [from] the new disciplinary hearing[], the state again objected and stated that [the prisoner] should be required to exhaust state court remedies." (Id. at 8-9 (emphasis omitted).) According to Petitioner, the Court "agreed [with the prisoner that] the [s]tate kept changing its position and allowed [the prisoner] to continue his [h]abeas [] proceeding without having to go to state courts." (Id. at 9 (referencing Clark v. Hooks, No. 1:16CV672, 2017 WL 3822898, at *1 (M.D.N.C. Aug. 8, 2017) (unpublished) (Peake, M.J.), recommendation adopted in pertinent part, 2017 WL 3724233 (M.D.N.C. Aug. 28, 2017) (unpublished) (Eagles, J.)); see also id. (citing Ali v. Hooks, No. 1:19CV481, 2020 WL 473626, at *3 (M.D.N.C. Jan. 29, 2020) (relying on Clark cases to find that "material factual questions [precluding summary judgment remained] as to whether '(i) there [wa]s an absence of available state corrective process; or (ii) circumstances exist[ed] that render[ed] such process ineffective to protect the rights of [Petitioner],' 28 U.S.C. § 2254(b)(1)(B)"),

recommendation adopted, 2020 WL 2572359 (May 21, 2020) (unpublished) (Biggs, J.)).)

Respondent contests the applicability of Clark to the instant matter (as well as Ali's reliance on Clark), noting that, "[i]n *Clark*, the p[rison]er filed a motion for appropriate relief ("MAR"), . . . the [s]tate responded that the claim fell outside the strictly limited capacity of MARs[, and t]he state trial court agreed." (Docket Entry 9 at 13 (citing Clark, 2017 WL 3822898, at *1).) Respondent emphasizes that "[t]he p[rison]er then filed a state habeas petition before the same superior court judge who eventually denied the petition on the merits[, and t]he p[rison]er . . . then sought review in both the North Carolina Court of Appeals and the [North Carolina Supreme Court], properly exhausting his claims." (Id. (citing Clark, 2017 WL 3822898, at *1).) Thus, Respondent argues, "[t]he p[rison]er in *Clark* used the wrong state court procedure[, i.e., a MAR,] when attempting to exhaust his state remedies" (id.), and that fact "d[id] not render North Carolina without a means for state courts to review disciplinary proceedings" (id. at 14).

Ordinarily, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28

U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").[3]  However, no state-court exhaustion requirement exists where a petitioner can demonstrate that <u>either</u> "there is an <u>absence</u> of available [s]tate corrective process," 28 U.S.C. § 2254(b)(1)(B)(i) (emphasis added), <u>or</u> "circumstances exist that render such process <u>ineffective</u> to protect the rights of the applicant," 28 U.S.C. § 2254(b)(1)(B)(ii) (emphasis added).  Moreover, "under the Rule 12(b)(6) standard, the court is 'obliged to "assume all facts pleaded by [the § 2254 petitioner] to be true."'"  <u>Wolfe v. Johnson</u>, 565 F.3d 140 (4th Cir. 2009) (quoting <u>Walker v. True</u>, 399 F.3d 315, 319 (4th Cir. 2005) (in turn quoting <u>Rouse v. Lee</u>, 339 F.3d 238, 247 n.8 (4th Cir. 2003) (en banc))).  Put another way, "whether [Petitioner] has 'stated a claim' in his [P]etition depends on whether he has set forth facts that, if true, would demonstrate that he is [entitled to relief]."  <u>Walker</u>, 399 F.3d at 320.  For the reasons that follow, the Court should find that Petitioner has alleged sufficient facts which, taken as true, demonstrate the absence and/or ineffectiveness of state court remedies under Section 2254(b)(1)(B) to address his challenge to the loss of sentence reduction credits and, thus, deny the Motion as to non-exhaustion.

As an initial matter, Respondent's attempt to distinguish <u>Clark</u> because the prisoner "used the wrong state court procedure[,

---

[3] The Court may deny a claim on the merits despite a lack of exhaustion. <u>See</u> 28 U.S.C. § 2254(b)(2).

i.e., a MAR,] when attempting to exhaust his state remedies"
(Docket Entry 9 at 13) falls short. As noted in <u>Clark</u>, after the
state trial court denied the prisoner's MAR as "regard[ing] a
disciplinary proceeding of an inmate and [] not subject to [MAR]
provisions," <u>Clark</u>, 2017 WL 3822898, at *1, the prisoner filed a
<u>habeas corpus petition</u> in the state trial court contesting the loss
of his sentence reduction credits, <u>see</u> <u>id.</u>, which that court
denied, "find[ing] that there [was] no basis in law or fact for
issuance of the [writ]," <u>Clark</u>, No. 1:16CV672, Docket Entry 7-6 at
2. The prisoner then sought review of the state habeas petition's
denial via a certiorari petition in the North Carolina Court of
Appeals, <u>Clark</u>, 2017 WL 3822898, at *1, and the state's response in
opposition "did not address the substance of [the prisoner's]
claims, and instead took the position that <u>prison disciplinary</u>
<u>procedures [we]re a matter of internal prison administration and</u>
<u>[we]re not amenable to direct judicial oversight</u>," <u>id.</u> at *1 n.2
(emphasis added). More specifically, the state argued as follows:

> [The prisoner] seeks judicial oversight of the internal
> disciplinary procedures of [the North Carolina Department
> of Public Safety ("NCDPS")]. <u>But prison disciplinary</u>
> <u>procedures are a matter of internal prison</u>
> <u>administration, and as such are not amenable to direct</u>
> <u>judicial oversight</u>. The Secretary of the [NCDPS] is
> directed by statute to "adopt rules for the government of
> the [s]tate prison system." N.C. Gen. Stat. § 148-11
> (2015). Rules promulgated by the Secretary under Section
> 148-11 are administrative and not judicial. <u>State v.</u>
> <u>Shoemaker</u>, 273 N.C. 475, 477, 160 S.E.2d 281, 282 (1968).
> <u>"The courts are not authorized to deal with the giving or</u>
> <u>withholding of privileges under these rules</u>." <u>Id.</u>
> (citing <u>State v. Garris</u>, 265 N.C. 711, 712, 144 S.E.2d
> 901, 902 (1965)).
>
> . . .

> [The prisoner] seeks to challenge a disciplinary
> proceeding that he faced arising from a specific
> infraction at Scotland Correctional Institution. Under
> [In re Stevens, 28 N.C. App. 471, 221 S.E.2d 839 (1976)],
> the disciplinary determination made is strictly an
> administrative matter, not subject to direct judicial
> review. Accordingly, the [state] trial court did not err
> in declining to act on the [prisoner's] MAR and denying
> the [prisoner's state habeas petition]. Because the
> issue [the prisoner] sought to raise is not amenable to
> direct judicial review through an extraordinary writ,
> th[e North Carolina] Court [of Appeals] should decline to
> issue a writ of certiorari for that purpose.

Clark, No. 1:16CV672, Docket Entry 7-8 at 4-6 (emphasis added); see
also id. at 8 (contending that state trial court properly denied
the prisoner's state habeas petition, because it "did not challenge
the validity of the judgment upon which he [wa]s [] imprisoned" but
rather "the internal process NCDPS used to determine whether he
committed an administrative infraction").

    Thus, contrary to Respondent's position here that a MAR
constitutes "the wrong state court procedure" (Docket Entry 9 at
13), but that Petitioner could exhaust his administrative remedies
by "fil[ing] a civil action" or "a state habeas petition in the
superior court" (id. at 12), the state took the position in Clark
that no state court procedure would suffice, because "the [prison]
disciplinary determination made [wa]s strictly an administrative
matter, not subject to direct judicial review," Clark, No.
1:16CV672, Docket Entry 7-8 at 6 (emphasis added). The Court in
Clark expressly noted those contradictory positions by the state,
see Clark, 2017 WL 3822898, at *4 (observing that "the record
reflects that[,] in the state proceedings, [the r]espondent took
the position that the state disciplinary proceedings were not

subject to judicial review in state court, even though [the
r]espondent had argued to this Court that state exhaustion was
required"), and held that such conflicting stances formed part of
the basis on which the Court applied "equitable tolling . . . to
allow consideration of the merits of the [prisoner's second Section
2254 p]etition," id.    Further muddying the waters, as a member
of this Court has observed, "there is no case on point as to
whether an inmate in the custody of the State of North Carolina
must sue in state court to exhaust his remedies before filing a
federal § 2254 action over a lack of due process in the rescission
of good time credits." Clark, No. 1:15CV388, Docket Entry 18
(M.D.N.C. Feb. 1, 2016) (Eagles, J.) (adopting recommendation of
dismissal of the prisoner's first Section 2254 petition without
prejudice to allow state court exhaustion but issuing a certificate
of appealability on unresolved exhaustion question) (emphasis
added).  Indeed, North Carolina's appellate courts have offered
differing positions on the state courts' ability to hear
constitutional claims involving prison matters that affect length
of sentence. Compare Jones, 364 N.C. at 253-54 ("The prison rules
and regulations respecting rewards and privileges for good conduct
('good time') are strictly administrative and not judicial.
Accordingly, as a general rule, the judiciary will not review the
DOC's grant, forfeiture, or application of credits against a
prisoner's sentence.  Nevertheless, DOC does not have carte
blanche. . . .  "[W]hen a government action is challenged as
unconstitutional, the courts have a duty to determine whether that

-11-

action exceeds constitutional limits." (emphasis added) (internal quotation marks and citations omitted)), with Stevens, 28 N.C. App. at 474 ("In practical terms, the questions of grade of conduct, privileges, disciplinary action and commendations are strictly administrative and not judicial matters. Thus, the difficult problems of when a person should be released and under what circumstances turn on analysis of internal correctional policy, and rightfully lie within the sole administrative jurisdiction of our [s]tate governmental departments, and are not, barring a clear instance of constitutional infirmity, subjects appropriate for judicial scrutiny." (emphasis added) (internal quotation marks and citations omitted)), and State v. Garris, 265 N.C. 711, 712-13 (1965) ("The prison rules and regulations respecting rewards and privileges for good conduct ('good time') are strictly administrative and not judicial. The legislature has authorized the State Prison Commission to promulgate, publish, enforce and apply such rules. Whether a prisoner shall benefit thereby depends on his own conduct. The giving or withholding of the rewards and privileges under these rules is not a matter with which the courts are authorized to deal." (emphasis added)). Significantly, none of those cases directly addressed the proper state court procedure for challenging, on federal constitutional grounds, the rescission of good time credits as a result of prison discipline.

Moreover, although older cases in the federal district courts of North Carolina hold that a prisoner can file a MAR to exhaust his state court remedies when challenging disciplinary loss of good

-12-

time credits, see Hatcher v. Keller, No. 1:10CV30, 2010 WL 1568458, at *2 (M.D.N.C. April 16, 2010) (unpublished) ("North Carolina permits a state prisoner to challenge the calculation of credits against a prison sentence by filing a [MAR] in the superior court where the conviction arose and by appealing any adverse ruling thereon in the state appellate courts." (emphasis added) (citing State v. Bowden, 193 N.C. App. 597, 597–99 (2008) (reversing trial court's denial of prisoner's MAR where prisoner challenged his custodian's refusal to apply his good behavior credits to his parole eligibility))), recommendation adopted, slip op. (M.D.N.C. Aug. 16, 2010) (Osteen, J.); accord Nunn v. N.C. Legis., No. 5:14CV3190, 2014 WL 7336864, at *3 (E.D.N.C. Dec. 22, 2014) (unpublished) (citing Hatcher); McGrath v. North Carolina Dep't of Corr., No. 1:11CV238, 2011 WL 5119437, at *3 (W.D.N.C. Oct. 28, 2011) (unpublished) (same); Sartori v. NC Atty. Gen., No. 1:11CV24, 2011 WL 1542134, at *2 (W.D.N.C. Apr. 22, 2011) (unpublished) (same); Osorio-Cruz v. Smith, No. 1:10CV662, 2010 WL 3432212, at *2 (M.D.N.C. Aug. 31, 2010) (unpublished) (same), recommendation adopted, slip op. (M.D.N.C. Feb. 4, 2011) (Eagles, J.), those cases do not aid Respondent's cause here given his current position that a MAR constitutes "the wrong state court procedure" (Docket Entry 9 at 13).

In light of the foregoing analysis, the Court should find that Petitioner has made a sufficient showing under Section 2254(b)(1)(B) as to the absence and/or ineffectiveness of state court remedies to address his challenge regarding the loss of

-13-

sentence reduction credits to survive dismissal on the basis of non-exhaustion.

## B. Merits

In ruling on a Rule 12(b)(6) motion, "a court evaluates the [initiating pleading] in its entirety, as well as documents attached [to] or incorporated into th[at pleading]." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see also Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (providing that courts must assess sufficiency of Section 2254 petition on face of "the petition and any attached exhibits"). The Court may also consider documents attached to the motion to dismiss, so long as they qualify as "clearly integral to, and w[ere] relied upon in, the [initiating pleading,] and [ the petitioner] does not dispute [their] authenticity." Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Moreover, "[i]n reviewing a Rule 12(b)(6) [motion, a court] may properly take judicial notice of matters of public record." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (observing that "sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss" include "the [initiating pleading] in its entirety, as well as . . . documents incorporated into th[at pleading] by reference, and matters of which a court may take judicial notice"). Typically, a "court cannot go beyond these documents" without

-14-

"convert[ing] the motion into one for summary judgment." E.I. du Pont, 637 F.3d at 448.

Here, in support of the Motion, Respondent has submitted copies of (1) Petitioner's Prison Disciplinary Packet (Docket Entry 9-2), and (2) the NCDPS Offender Disciplinary Procedures (Docket Entry 9-3), which both contain documents neither appended to nor incorporated by reference into the Petition (compare Docket Entry 1, with Docket Entries 9-2, 9-3). Significantly, the Prison Disciplinary Packet includes the Record of Hearing which Petitioner did not sign (see Docket Entry 9-2 at 21-22), as well as witness statement forms from two other inmates, Roger Connell and Byron Moore (see id. at 30, 31), that Petitioner (A) maintains (under penalty of perjury (see Docket Entry 12-1 at 2, 13)) he had not seen until he received the Motion and supporting materials (see id. at 11), and (B) contends prison staff forged (see id. at 11-12). Moreover, Respondent has relied extensively on those documents in arguing that the Petition fails to state a claim upon which relief can be granted. (See Docket Entry 9 at 5-10.) Furthermore, Respondent has not shown that such internal prison disciplinary documents constitute a matter of public record. (See id.) Those circumstances warrant conversion of the merits-related portion of the Motion into one for summary judgment. See E.I. du Pont, 637 F.3d at 448.

When converting a motion to dismiss into a motion for summary judgment, the Court must give "'the parties a reasonable opportunity to present all the material that is pertinent to the

-15-

[converted] motion.'" <u>Derosa v. Colvin</u>, No. 5:14CV414, 2014 WL 5662771, at *2 (E.D.N.C. Nov. 4, 2014) (unpublished) (quoting Fed. R. Civ. P. 12(d)). "[T]he term 'reasonable opportunity' requires that all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." <u>Gay v. Wall</u>, 761 F.2d 175, 177 (4th Cir. 1985) (alteration and internal quotation marks omitted).

In this case, after Respondent submitted evidence in support of the Motion "outside the pleadings, putting [Petitioner] on notice of possible conversion," <u>Lake v. Astrue</u>, Civ. No. 6:11-2107, 2012 WL 3135385, at *2 n.1 (D.S.C. Aug. 1, 2012) (unpublished) (citing <u>Fornshill v. Ruddy</u>, No. 95-2490, 89 F.3d 828 (table), 1996 WL 333223, at *2 (4th Cir. June 11, 1996) (unpublished)), the Clerk of Court sent Petitioner a notice under <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising him that Respondent "filed a Motion to Dismiss on [May 18, 2022], which may or may not be supported by an affidavit," and that Petitioner "ha[d] the right to file a 20-page response in opposition to [Respondent]'s motion," as well as to, "if appropriate, [] file affidavits or evidence in rebuttal." (Docket Entry 10 at 1.) Petitioner thereafter filed a verified Response in Opposition to Respondent's Motion to Dismiss (Docket Entry 12), to which Petitioner attached his Affidavit (Docket Entry 12-1), signed under penalty of perjury (<u>see</u> <u>id.</u> at 2, 13). The undersigned United States Magistrate Judge therefore

-16-

"concludes that [Petitioner] has been afforded a 'reasonable opportunity' to present materials relevant to h[is R]esponse," Derosa, 2014 WL 5662771, at *2, and will convert the Motion into a motion for summary judgment, see Herbert v. Saffell, 877 F.2d 267, 270 (4th Cir. 1989) (treating district court's holding as grant of summary judgment, where "[t]he [plaintiffs] had ample opportunity to bring forth evidence to show that genuine issues of material fact remained").[4]

In analyzing a summary judgment motion, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of a genuine

---

[4] The Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (italics, internal citations, and internal quotation marks omitted). The Court, therefore, should construe Petitioner's verified Response and Affidavit as both an amendment to the Petition, as well as evidence in opposition to Respondent's converted motion for summary judgment. See 28 U.S.C. § 2242 (permitting "amend[ment] or supplement[ation of Section 2254 petitions] as provided in the rules of procedure applicable to civil actions"); Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts (setting forth that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or the[ R]ules [Governing Section 2254 Cases], may be applied to a proceeding under the[ R]ules [Governing Section 2254 Cases]; Fed. R. Civ. P. 15(a)(2) (providing that, when more than 21 days have passed after service of a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave," but that "[t]he court should freely give leave when justice so requires").

dispute of material fact, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), with "any factual assertion in the movant's affidavits will be accepted . . . as being true unless the [non-movant] submits his own affidavits or other documentary evidence contradicting the assertion," <u>Neal v. Kelly</u>, 963 F.2d 453, 456 (D.C. Cir. 1992) (internal quotation marks omitted).

"While the Court will view the facts and inferences drawn in the light most favorable to the nonmoving party, the party opposing the motion for summary judgment must put forth specific facts showing a genuine issue for trial." <u>Dunn v. Aclairo Pharm. Dev. Grp., 401(k) Plan</u>, No. 1:15CV975, 2016 WL 592787, at *2 (E.D. Va. Feb. 10, 2016) (unpublished) (citing <u>Anderson</u>, 477 U.S. at 248). In that regard, the nonmoving party cannot rest on conclusory allegations or denials, and "[t]he mere existence of a scintilla of evidence" will not defeat a summary judgment motion. <u>Anderson</u>, 477 U.S. at 252, 256.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). However, inmates possess a protected liberty interest in the award of statutory good time credits and, therefore, "the minimum requirements of procedural due process appropriate for the circumstances must be observed" at prison disciplinary hearings resulting in the loss of good time credits. <u>Id.</u> at 557. An inmate receives due process in conjunction with a prison disciplinary proceeding if he receives: (1) advance written notice of the

disciplinary charge(s) at least 24 hours before his disciplinary hearing; (2) an opportunity, consistent with institutional safety and correctional goals, to present witnesses and documentary evidence in his defense; (3) a written statement by the fact finder(s) regarding the evidence relied on and the reasons for any disciplinary action; (4) assistance from prison staff or a competent fellow prisoner, if necessary to enable the inmate to comprehend his case and present evidence in his defense; and (5) a hearing conducted by an impartial fact-finder. See id. at 563-76; see also Clark, 2017 WL 3822898, at *5 (summarizing Wolff similarly). If the prison provides those protections and "some evidence" exists to support the resolution of the disciplinary charge, then the disciplinary proceedings have satisfied the Due Process Clause's procedural requirements. See Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985).

Here, Petitioner contends that Respondent violated his due process rights in the following respects: (1) prison staff "obstructed [his] defense by tampering/destroying witness statements," (2) "Sergeant Riddick bribed [Petitioner's] two [witnesses] with cake," (3) the DHO "denied [the two offenders] as witnesses without stating a reason as to why," (4) Petitioner "was not allowed to speak," or "to refute any 'evidence,' or shown any evidence that was used against [him]," (5) Petitioner "was denied camera footage that had exculpatory value," and (6) the DHO "failed to be fair and impartial." (Docket Entry 1, ¶ 12 (Ground One)(a).) Those allegations amount to claims that prison staff (A) interfered

-19-

with Petitioner's right to present evidence in his own defense, Wolff, 418 U.S. at 566, and (B) failed to provide Petitioner with an impartial fact-finder, id. at 570-71. As the following discussion makes clear, genuine issues of material fact remain that preclude summary judgment on all of Petitioner's subclaims except the bribery subclaim.

1. Opportunity to Present Evidence

a. Tampering/Destroying Witness Statements

In Petitioner's Affidavit, he avers as follows in support of his tampering subclaim:

> . . . I asked [the] DHO [] about my request for the live witnesses to be present at my hearing, whereupon he stated: "those offenders wrote no statement on your behalf." I was left in shock by [the] DHO['s ] remark because that was the farthest thing from the truth. I know both offenders did in fact write statements on my behalf detailing my innocence because they wrote their statements in their cells which was directly across from mine. After both offenders [Roger] Connell and [Byron] Moore finished writing their statements they alerted me to look outside of my cell window so they could show me that they did in fact write statements for me detailing the events of February 11, 2021, Mr. Connell stated: "I wrote a whole page," Mr. Moore stated: "Me too." I clearly observed that both offenders Connell and Moore did in fact write statements on my behalf and did not opt to write "no statement" as claimed by the DHO [], the DHO who did not provide me with any of the "evidence" in his possession and from that point I realized that the reporting party/[i]nvestigating officer either committed fraud/forgery to obstruct my ability to properly defend myself against their false and fabricated charges against me. . . . Upon review o[f] Respond[e]nt's Exhibit 1 (Petitioner's prison disciplinary [p]acket) immediately I noticed two fraudulent, forged DC138b statement by witness documents bearing the names of offenders Byron Moore and Roger Connell, these documents are what [the] DHO [] referenced in his Record of Hearing that stated "NO STATEMENT" and were purportedly to have been written and signed by offenders Connell and Moore. I was not provided with these documents until after I received Respond[e]nt's Exhibit 1. I know these two DC-138b

[s]tatement by witness documents are forged and
fraudulent because once [the] DHO [] claimed in his
Record of Hearing that both offenders opted to write "No
Statement" I inquired of both offenders after the hearing
"what happened" and to their surprise they were disturbed
by what staff had done because they assured me that they
did write statements and turned them in to the
investigating officer who must have been the one who
discarded their original statements and replaced them
with forged/fraudulent ones. I gathered statements from
both Connell and Moore for [a]ppeal purposes detailing
facts of foul play and illegal actions by staff.
Offenders Connell and Moore both signed their respective
signatures on the new statements and after carefully
comparing the signatures on the DC138b statement by
witness contained in Respond[e]nt's Exhibit 1 that were
purported to be offenders Connell and Moore to the
statements that I personally gathered from both
offenders, it is cleary [sic] distinguishable that the
signatures are not the same and that the handwriting and
signatures on the DC138b statement by witness contained
in Respond[e]nt's Exhibit 1 are of the same handwriting
and have been forged.

Docket Entry 12-1 at 4-12 (internal paragraph numbering and spacing

omitted).)

The undersigned's recommendation that the Court construe

Petitioner's verified Response in Opposition and Affidavit as both

an amendment to the Petition and as a response in opposition to

Respondent's converted motion for summary judgment defeats

Respondent's contention that Petitioner "failed to present any

evidence supporting []his [tampering] assertion," and "fail[ed] to

specify which witness statements [we]re supposedly missing" (Docket

Entry 9 at 6).[5]    Furthermore, Respondent's assertion that "the

_____

[5] Even if the Court adjudicated Respondent's motion as one to dismiss under
Rule 12(b)(6), Respondent's contention that Petitioner "failed to present any
evidence supporting []his [tampering] assertion," and "fail[ed] to specify which
witness statements [we]re supposedly missing" (Docket Entry 9 at 6) would not
warrant dismissal.  The Prison Disciplinary Packet which <u>Respondent</u> attached to
its Brief contains not only Petitioner's administrative appeal statement that
"staff have altered and or changed/tampered with exculpatory evidence for [his]
(continued...)

-21-

witness statements [of Connell and Moore reflecting the words "No Statement"] do not appear to be altered in any way" (Docket Entry 9 at 6 (emphasis added) (citing Docket Entry 9-2 at 30, 31)) misses the mark. Beyond the unsworn nature of those statements (see Docket Entry 9-2 at 30, 31), a genuine issue of material fact exists whether "each witness signed their statement," as contended by Respondent (Docket Entry 9 at 6). The handwriting reflected in the upper portions of the statements providing, inter alia, the name of the witness and the name of the person obtaining the statement, appears very similar to the handwriting in the "[s]ignature of witness" lines (Docket Entry 9-2 at 30, 31) and, as Petitioner points out (see Docket Entry 12-1 at 12), the signatures on the "No Statement" witness statements do not match the signatures on the statements from Connell and Moore obtained by Petitioner (compare Docket Entry 9-2 at 30, 31, with id. at 6, 7, 17).[6]

In sum, genuine issues of material fact remain regarding whether Connell and Moore provided substantive statements for Petitioner prior to the hearing and, if so, what happened to those

_____

[5](...continued)
defense" in that "[b]oth offender Bryan [sic] Moore [cell] 4B-01, and Roger Connell [cell] 4B-02 did in fact write statements on [his] behalf but was [sic] not provided to the [DHO]" (Docket Entry 9-2 at 3 (emphasis added)), but also the substantive statements of Moore and Connell (id. at 5-7, 17). Those circumstances would warrant allowing Petitioner an opportunity to amend.

[6] Respondent additionally argues that "the new statements [from Connell and Moore] do not claim any original statements were changed." (Docket Entry 9 at 6 n.1 (citing Docket Entry 9-2 at 5-17).) Respondent's argument glosses over Moore's statement, which expressly states: "I did write a [s]tatement for [Petitioner] when the [corrections officer] had his knee on [Petitioner's] neck[.] I don't know what happen [sic] to it [b]ut I wrote one[,] me and 2 others[.]" (Docket Entry 9-2 at 17 (emphasis added).)

statements during the time leading up to the hearing, as well as whether Connell and Moore initially refused to provide any statement to the investigating officer. As such, the Court should deny summary judgment on Petitioner's tampering subclaim.

b.   <u>Refusal to Permit Live Witnesses</u>

Those same issues of material fact also prevent summary judgment on Petitioner's related subclaim that the DHO refused to permit Petitioner to call Connell and Moore as live witnesses at the hearing (see Docket Entry 1, ¶ 12(Ground One)(a) (averring that prison staff "denied [two offenders] as witnesses without stating a reason as to why"); <u>see also</u> Docket Entry 12-1 at 4 ("I asked [the] DHO [] about my request for the live witnesses to be present at my hearing, whereupon [the DHO] stated: 'those offenders wrote no statement on your behalf.'"). Although the uncertified, summary Record of Hearing reflects that Petitioner "request[ed] live witness [sic] be present at his hearing[,] . . . offender Bryan [sic] Moore [in cell] 4B-01 wrote no statement on the statement that he was provided[,] offender Roger Connell [in cell] 4B-02 wrote no statement on the statement that he was provided[, and] offender Jordan Harrison [in cell] 4B-15 state[d] that he could not see anything" (Docket Entry 9-2 at 21 (capitalization omitted)), as explained above, questions of material fact exist, precluding summary judgment, as to whether Connell and Moore actually refused to provide statements to the investigating officer.

c. <u>Bribery of Witnesses</u>

Petitioner provided the following facts, under penalty of perjury (<u>see</u> Docket Entry 12-1 at 2, 13), supporting his bribery subclaim:

> I know Sgt. Riddick gave both offenders Connell and Moore cake on the morning of February 22, 2021 because on this same morning I personally witnessed Sgt. Riddick hand deliver two styrofoam trays that were covered with lids to the doors of both offenders. Upon observing this transaction I inquired of both of the offenders as to, "what was it," that Sgt. Riddick gave to them as they both gave me the answer of, "cake, he said he brought us homemade cake so we would stay quiet about what they did to you."

(<u>Id.</u> at 3 (paragraph numbering and spacing omitted).)[7]

Construing Petitioner's verified Response in Opposition and Affidavit as both an amendment to the Petition and as a response in opposition to Respondent's converted motion for summary judgment overcomes Respondent's contention that "Petitioner failed to present <u>any evidence</u> supporting this assertion or even <u>specify which offenders</u> Sgt. Riddick allegedly bribed" (Docket Entry 9 at

---

[7] Connell provided an <u>unsworn</u> statement that supported Petitioner's allegations of bribery:

> On 02-22-2021 S[g]t Riddick enterd [sic] 4B segregation and brought me a styrofoam tray full of white cake with chocolate icing as a bribe for contracting [sic] my statement concerning the incident with [Petitioner] in [cell] 4B14. Review camera footage for around 5:00 AM - 5:45 AM for incident. This is my statement as it happend [sic] signed and dated on this day February [sic] 22, 2021.

(Docket Entry 9-2 at 7 (internal quotation marks omitted).) Respondent correctly points out that Connell's corroborative statement "was neither notarized nor made under penalty of perjury" (Docket Entry 9 at 7), and the Court will not consider such unsworn statements when addressing Respondent's (converted) summary judgment motion, <u>Neal</u>, 963 F.2d at 456. Moore's unsworn statement did not address Petitioner's bribery allegations. (<u>See</u> Docket Entry 9-2 at 17.)

7 (emphasis added).[8]  Respondent additionally argues that "[i]t strains credulity to believe that Petitioner, supposedly armed with this evidence during the hearing, would not even attempt to present it." (Id.)  That argument ignores the fact that Petitioner averred that he "let [the] DHO [] know that [he] wished . . . to present . . . offender Connell's statement of how Sgt. Riddick gave him cake from 'home' as a bribe for retracting or otherwise keeping 'hush'" (Docket Entry 12-1 at 2), but that "[the] DHO [] took his left hand and placed it up to gesture for [Petitioner to] stop," and "stated: 'that won't be necessary'" (id. at 3).

Notwithstanding Respondent's above-described unsuccessful arguments, Petitioner's bribery averments should not survive summary judgment adjudication, because they rely on inadmissible hearsay statements from Moore and Connell to establish (1) that Sgt. Riddick delivered <u>cake</u> to those inmates, and (2) Sgt. Riddick's <u>motive</u> in delivering the cake.  (See id. (Petitioner's averment that he "personally witnessed Sgt. Riddick hand deliver <u>two styrofoam trays that were covered with lids</u>" to Moore and Connell, and that he "<u>inquired of both of the offenders</u> as to, 'what was it,' that Sgt. Riddick gave to them a[nd] <u>they both gave</u>

---

[8] If the Court chose to adjudicate Respondent's Motion under Rule 12(b)(6), Respondent's contention that "Petitioner failed to present any evidence supporting []his [bribery] assertion or even specify which offenders Sgt. Riddick allegedly bribed" (Docket Entry 9 at 7) would still lack merit.  Respondent's own materials attached to his Brief contain Petitioner's appeal statement, which clearly identifies both Connell and Moore as the individuals Petitioner alleges Sgt. Riddick bribed with cake (see Docket Entry 9-2 at 3), as well as Connell's statement corroborating Petitioner's bribery allegations (see id. at 7).

[him] the answer of, 'cake, [Sgt. Riddick] said he brought [them] homemade cake so [they] would stay quiet about what [prison staff] did to [Petitioner].'") (emphasis added).) Moreover, Petitioner's sworn statements fail to identify any due process consequences of Sgt. Riddick's alleged bribe. (See Docket Entry 1, ¶ 12(Ground One)(a); see also Docket Entries 12, 12-1.) In other words, Petitioner does not state that Sgt. Riddick's bribe caused Connell and Moore to retract statements favoring Petitioner, or to refuse to testify at Petitioner's hearing. (See Docket Entry 1, ¶ 12(Ground One)(a); see also Docket Entries 12, 12-1.) Accordingly, even taking Petitioner's sworn statements in the light most favorable to him, he has not shown that Sgt. Riddick's alleged actions impeded Petitioner's due process right to present evidence on his own behalf at the hearing. The Court therefore should grant summary judgment on this subclaim.

d.  Barring Petitioner's Presence at Hearing to Offer His Own Testimony

Petitioner additionally avers in his Affidavit that, after the DHO refused to let Petitioner present witness statements and live witnesses at the outset of the hearing, Petitioner "objected to [the] DHO['s] refusal to allow [Petitioner's] oral defense and [] notified [the] DHO [] that [Petitioner] ha[d] due process rights that [the DHO] ha[d] to acknowledge but [the] DHO [] stated: 'that won't be necessary.'" (Docket Entry 12-1 at 3.) According to Petitioner, "the door [to the hearing office] was closed a[nd he] was made to wait outside of the office door as [the] DHO []

-26-

conducted a one sided hearing excluding [Petitioner] from the proceedings." (Id.)

Although the United States Supreme Court in Wolff did not expressly hold that due process includes "a prisoner's right to attend his own disciplinary hearing[, s]everal courts[ ] have indicated that such a right is implicit in the prisoner's right to call witnesses and present documentary evidence at the hearing." Battle v. Barton, 970 F.2d 779, 782 (11th Cir. 1992) (citing Moody v. Miller, 864 F.2d 1178, 1180 (5th Cir. 1989), and Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1988)). An inmate's presence at his disciplinary hearing serves the goals of due process by "allowing the inmate to witness the proceedings against him and providing a check on the authority of the disciplinary body." Id. However, the Supreme Court has also made clear that the prison's competing interests in maintaining institutional safety and meeting other correctional goals can curtail the rights of inmates at disciplinary hearings, and that the prison satisfies due process "so long as the reasons [for depriving an inmate of his rights] are logically related to institutional safety or correctional goals." Ponte v. Real, 471 U.S. 491, 497 (1985) (internal quotation marks omitted); see also Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004) (recognizing that prison may limit (or deny) inmate's right to present evidence in own defense at disciplinary hearing where "legitimate penological interests justified" such limitation or denial (citing Wolff, 418 U.S. at 566)). "[T]he burden of persuasion as to the existence and sufficiency of such

-27-

institutional concerns . . . is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985) (citing Ponte, 471 U.S. at 499–500).

Respondent insists that the Record of Hearing "shows[ that] Petitioner did indeed speak during the hearing[ a]nd [he] has presented no evidence to contradict this." (Docket Entry 9 at 10; see also Docket Entry 9-2 at 21 (Record of Hearing stating that, "[a]t the hearing, [Petitioner]'s verbal statement [wa]s consist [sic] with his written statement," and that "[he] state[d] that he denie[d] all of thes [sic] charges and that these [we]re reprisal retaliation for him filing a grievance against staff" (capitalization omitted)).) That statement, at most, leaves the Court with a material factual dispute, in light of the uncertified, summary nature of the Record of Hearing and Petitioner's sworn statement that the DHO refused to provide Petitioner with an opportunity to testify on his own behalf, did not allow Petitioner inside the hearing room, and conducted the disciplinary hearing in his absence (see Docket Entry 12-1 at 3). Notably, Respondent has not attempted to show the existence of "reasons [for the DHO to refuse to take Petitioner's testimony and to bar him from the hearing which we]re logically related to institutional safety or correctional goals," Ponte, 471 U.S. at 497.

Under such circumstances, genuine issues of material fact remain that preclude summary judgment on Petitioner's claim that the DHO violated Petitioner's due process rights by failing to allow Petitioner to remain present during the hearing and to

-28-

testify on his own behalf.  See <u>Mayweather v. Guice</u>, No. 1:17CV100, 2018 WL 3868806, at *7 (W.D.N.C. Aug. 14, 2018) (unpublished) ("Plaintiff['s] alleg[ations] that [the DHO] refused to allow [Petitioner] to present evidence at his disciplinary hearing . . . state a plausible due process claim against [the DHO] and this claim will be permitted to proceed.").

e.  <u>Request for Video Surveillance Evidence</u>

The Petition alleges that Petitioner "was denied camera footage that had exculpatory value," as well as that "a use of force investigation [existed] that included camera footage but [the DHO] claimed there wasn't any."  (Docket Entry 1, ¶ 12(Ground One)(a).)  Petitioner's Affidavit expounds on that subclaim by averring that Petitioner "implored [the] DHO [] from outside the [hearing] office: 'check camera footage the incident happened outside the cell on camera,' whereupon [the] DHO [] stated: 'there is no camera footage.  I've found you guilty of all the charges.'" (Docket Entry 12-1 at 5.)  Petitioner further claims that the DHO's "assertion [that no footage exists] is belied by the use of force report that was done by Lt. Beasley," who "affirmed that there was in fact camera footage of the events [underlying Petitioner's disciplinary charges] in that report, which was not made available although there was mention of a 'use of force' on the [Record of Hearing]."  (<u>Id.</u> at 6 (referencing Docket Entry 9-2 at 21).)

"[P]rison video surveillance evidence constitutes documentary evidence subject to the procedural due process protections recognized in <u>Wolff</u>."  <u>Lennear v. Wilson</u>, 937 F.3d 257, 269 (4th

Cir. 2019). In that regard, "upon request, an inmate is entitled to access prison video surveillance evidence pertaining to his or her disciplinary proceeding unless the government establishes that disclosure of such evidence would be, <u>under the particular circumstances of the case</u>, 'unduly hazardous to institutional safety or correctional goals.'" <u>Id.</u> (quoting <u>Wolff</u>, 418 U.S. at 566 (emphasis added)); <u>see also</u> <u>id.</u> at 270 (holding that "prison officials must consider . . . requests for video surveillance evidence[ ] on an individualized basis" (internal quotation marks omitted)). Furthermore, "if prison officials decide to deny an inmate access to requested . . . video surveillance evidence[] on grounds that such evidence is not pertinent to the inmate's alleged violation, then that determination must be made by the disinterested hearing officer, not prison officials involved in lodging the charge." <u>Id.</u> at 271. Moreover, "prison officials bear the 'burden to come forward with evidence of the reasons for' denying an inmate's request for access to . . . video surveillance footage" and, if such "officials fail to identify a specific safety or correctional concern, <u>courts may not 'speculate' as to the officials' potential reasons for denying an inmate access to evidence in order to uphold a disciplinary decision</u>." <u>Id.</u> at 270 (emphasis added) (quoting <u>Smith v. Massachusetts Dep't of Corr.,</u> 936 F.2d 1390, 1400 (1st Cir. 1991)).

Respondent maintains that "Petitioner did not have a right to the video footage," because, "[a]s noted in the [R]ecord of [H]earing, the [DHO] found the requested video footage to be

irrelevant and unrelated to the case at hand." (Docket Entry 9 at 9-10 (citing Docket Entry 9-2 at 21).) Thus, Respondent argues, Petitioner ha[d] no valid right to access [the video footage]." (Id. at 10 (citing Lennear, 937 F.3d at 271).) Although the DHO did note in the Record of Hearing that he had "view[ed] the footage from the camera located at the end of restrictive housing," and that "there [wa]s no footage of the incident" (Docket Entry 9-2 at 21), in view of the recommendation, discussed in more detail below, that the Court deny summary judgment with respect to Petitioner's claim that the DHO "failed to be fair and impartial" (Docket Entry 1, ¶ 12 (Ground One)(a)), a question of material fact remains whether a "disinterested hearing officer" made the "determination" that video surveillance "evidence [wa]s not pertinent to [Petitioner]'s alleged violation," Lennear, 937 F.3d at 271 (emphasis added). Accordingly, Respondent has not shown entitlement to judgment as a matter of law on this subclaim.

2. Impartial Fact-Finder

Petitioner additionally argues that Respondent deprived him of "a hearing before an impartial fact-finder – that is, one whose mind [wa]s not already made up and who c[ould] give [him] a fair hearing." (Docket Entry 12 at 11 (citing, inter alia, Surprenant v. Rivas, 424 F.3d 5, 17-18 (1st Cir. 2005), and Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990)).) Petitioner avers under penalty of perjury that the following sequence of events occurred at his prison disciplinary hearing:

> I was led to a door that was opened and told not to enter
> but to just stand in front of the door and awaiting

inside the office was [the] DHO []. A few moments later
I was questioned by [the] DHO [] as follows: "what is
your name and opus number for identification purposes?"
After verification of my identity I was further asked,
"How do you plead to the charges of A99 ref A03, B03 and
B25?" Whereupon I stated: "not guilty." I proceeded to
let [the] DHO [] know that I wished to make an oral
statement in my defense against the charges and to
present physical evidence in my possession consisting of
further witness statements from offenders Roger Connell,
Byron Moore and Michael Needham elucidating events of the
incident that occurred on February 11, 2021 as well as
offender Connell's statement of how Sgt. Riddick gave him
cake from 'home' as a bribe for retracting or otherwise
keeping 'hush' about the true events of that night
. . . . However, [the] DHO [] took his left hand and
placed it up to gesture for me to stop as he shook his
head from left to right. Whereupon I objected to [the]
DHO['s ] refusal to allow my oral defense and I notified
[the] DHO [] that I have due process rights that he has
to acknowledge but [the] DHO [] stated: "that won't be
necessary." After which the door was closed as I was
made to wait outside of the office door as [the] DHO []
conducted a one sided hearing excluding me from the
proceedings. After about 30-45 minutes later the door
was opened again and immediately I proceeded to question
[the] DHO [] as to why I was not allowed to orally defend
myself and present physical evidence notifying him that
his refusal violates my rights to due process to hear and
be heard. Whereupon [the] DHO [] again replied: "I said
that won't be necessary," displaying apathy and behavior
consistent with partiality. Then I asked [the] DHO []
about my request for the live witnesses to be present at
my hearing, whereupon he stated: "those offenders wrote
no statement on your behalf." . . . [T]he DHO did not
provide me with any of the 'evidence' in his
possession . . . . I implored [the] DHO [] from outside
the office: "check the camera footage the incident
happened outside the cell on camera," whereupon [the] DHO
[] stated: "there is no camera footage. I've found you
guilty of all the charges." . . . [The] DHO [] did not
place in the Record of Hearing the above mentioned
facts . . . . [The] DHO [] falsely placed in the Record
of Hearing that I was . . . afforded my rights during the
hearing and that I made an oral statement "consistent"
with my written statement which is also false when he
refused to hear any testimony from me or review any of
the documents of physical evidence in my
possession. . . . Upon review o[f] Respond[e]nt's
Exhibit 1 (Petitioner's prison disciplinary [p]acket)
immediately I noticed two fraudulent, forged DC138b
statement by witness documents bearing the names of

offenders Byron Moore and Roger Connell, these documents
are what [the] DHO [] referenced in his Record of Hearing
that stated "no statement" . . . . I was not provided
with these documents until after I received
Respond[e]nt's Exhibit 1.

(Docket Entry 12-1 at 2-11 (capitalization, paragraph numbering,
and paragraph spacing omitted).) According to Petitioner, the
DHO's "statements and . . . action of excluding [P]etitioner from
the hearing displayed his lack of impartiality." (Docket Entry 12
at 12 (citing, inter alia, Pino v. Dalsheim, 605 F. Supp. 1305,
1318 (S.D.N.Y. 1984)).)

"A prisoner is entitled to have disciplinary charges against
him considered by an impartial tribunal," Bennett v. King, Nos. 92-
7056, 93-6263, 19 F.3d 1428 (table), 1994 WL 81270, at *1 (4th Cir.
May 24, 1994) (unpublished) (citing Wolff), but "the degree of
impartiality required of prison hearing officials does not rise to
the level of that required of judges generally," Francis v.
Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) (citing Cleavinger v.
Saxner, 474 U.S. 193, 203-04 (1985)). Nevertheless, "[t]he
touchstone of due process is freedom from arbitrary governmental
action," Ponte, 471 U.S. at 495 (citing Wolff, 418 U.S. at 558),
and "[t]he due process requirements for a prison disciplinary
hearing . . . are not so lax as to let stand the decision of a
biased hearing officer," Edwards v. Balisok, 520 U.S. 641, 647
(1997).

In contrast to Petitioner's sworn account of the hearing, the
Record of Hearing provides as follows:

Summary of all information, evidence, or statements
developed at the hearing relating to guilt or innocence:

-33-

On 2/11/21 at 2325 hrs, Sgt. Riddick observed cell 4B-14 with a mattress pushed against the cell door blocking the view into the cell. Sgt. Riddick called for assistance and once assistance arrived, had the cell door opened to remove the mattress. As the cell door opened[, Petitioner] charged at custody staff. [Petitioner] is charged with an A99 ref A03, B03, and B25.

The DHO explained the charges, disciplinary and appeal rights to [Petitioner]. [Petitioner] pled not guilty to the A99 B03 B25. [Petitioner] was afforded his rights during the disciplinary process. The DHO explained the evidence to [Petitioner]. . . . At the hearing, [Petitioner]'s verbal statement is consist [sic] with his written statement. [Petitioner] states that he denies all of thes [sic] charges and that these are reprisal retaliation for him filing a grievance against staff.

He request [sic] a written statement from Sgt. Riddick. Sgt. Riddick is the reporting party, his statement is attached to this package.

[Petitioner] did request live witness [sic] be present at his hearing. . . . Offender Bryan [sic] Moore [in cell] 4B-01 wrote no statement on the statement he was provided.

Offender Roger Connell [in cell] 4B-02 wrote no statement on the statement he was provided.

Offender Jordan Harrison [in cell] 4B-15 state[d] that he could not see anything.

[Petitioner] did request physical evidence be reviewed at his hearing. After viewing the footage from the camera located at the end of restrictive housing there is not footage of the incident.

[Petitioner] did not request staff assistance at his hearing.

Based on the reporting party's statement and investigating officer's report, [Petitioner] is found guilty of A99 fer [sic] A03, B03 and B25. Sanctions imposed to deter this type of behavior in the future. [Petitioner] unable to sig [sic] [.]

(Docket Entry 9-2 at 21-22 (capitalization and omitted).) At the bottom of the Record of Hearing, the line for Petitioner's signature reads "unable to sig[n]." (Id. at 22.)

-34-

As the above-quoted material makes clear, genuine issues of material fact remain regarding whether Respondent provided Petitioner with an impartial fact-finder in compliance with Wolff. The sworn Affidavit of Petitioner differs sharply from the Record of Hearing as to whether the DHO (1) failed to show Petitioner the evidence used against him at the hearing; (2) barred Petitioner from testifying on his own behalf or from presenting other evidence, such as live witnesses and/or witness statements; and (3) refused to permit Petitioner to remain in the hearing room during the hearing proceedings, and (if so) the grounds and circumstances under which such refusal occurred. Moreover, the Court cannot resolve these evidentiary conflicts at the summary judgment stage, particularly given that the Record of Hearing does not constitute a verbatim (or certified) transcript of proceedings, lacks any indication that the DHO took Petitioner's statements reflected therein under oath, and does not contain Petitioner's signature. (See id. at 21-22.)

The Second Circuit has persuasively addressed the types of partiality allegations in the prison discipline context that should withstand a motion for summary judgment. See Francis, 891 F.2d at 46. In that case, the prisoner "allege[d], *inter alia*, that [the DHO] suppressed evidence, distorted testimony, and never informed [the prisoner] of testimony against him." Id. The Second Circuit rejected the DHO's argument that the prisoner's "specifications of bias d[id] not show actual prejudgment" of the prisoner's case by the DHO, because "the issue ar[o]se[] on a motion for summary

-35-

judgment[ and] all reasonable inferences [were] drawn in favor of [the prisoner]." Id. The court was careful to note that "a plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment," but held that the prisoner "ha[d] presented more than a mere conclusory allegation." Id. Similarly, Petitioner here has presented, via sworn statements in the Petition and his Affidavit, more than "mere conclusory allegation[s]" of partiality that should preclude summary judgment on this final subclaim. See McCormack v. Cheers, 818 F. Supp. 584, 598 (S.D.N.Y. 1993) (where DHO failed to provide adequate explanation for not calling witness repeatedly requested by inmate and did not give inmate advance notice of inculpatory evidence, "th[e c]ourt f[ound] a genuine issue of material fact concerning whether [the DHO] was an unbiased and impartial hearing officer").

## IV. Conclusion

The possible application of Section 2254(b)(1)(B) precludes dismissal for failure to exhaust. Respondent's reliance on materials outside the pleadings requires conversion of the Motion to one for summary judgment as to all merits-related matters. Petitioner's bribery subclaim fails as a matter of law, but material questions of fact exist as to all other claims/subclaims in the Petition (as deemed amended).

**IT IS THEREFORE RECOMMENDED** (A) that the Motion (Docket Entry 8) (i) be denied to the extent it relies on the defense of non-exhaustion, and (ii) be converted to a motion for summary judgment

to the extent it challenges the merits of Petitioner's claim(s), (B) that summary judgment be granted for Respondent as to Petitioner's bribery subclaim, but denied as to all of Petitioner's remaining subclaims, and (C) that this matter be set for an evidentiary hearing, with counsel appointed for Petitioner pursuant to Rule 8(c) of the Rules Governing Section 2254 Cases.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 30, 2023